Martinez, et. al. v. New York Transit Authority, et. al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**


        At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 2nd day of December, two thousand sixteen.

Present:         DENNIS JACOBS,
                 ROSEMARY S. POOLER,
                         *Circuit Judges*
                 GEOFFREY W. CRAWFORD,[1]
                         *District Judge*.

_____

MARIA MARTINEZ, as Executor of the Estate of
OSCAR MARTINEZ, ROSETTA KIRKLAND,
JUANA GUTIERREZ, SOOSSAN SALMASSI,
CHARLES B. THIGPEN, and DEBORAH ENGLISH,

        *Plaintiffs-Appellants*,

OSCAR MARTINEZ,

        *Plaintiff*,

        -v.-

NEW YORK CITY TRANSIT AUTHORITY,
SIDNEY GELLINEAU, SARAH LIBRERA,
METROPOLITAN TRANSIT AUTHORITY,

15-3159-cv(L)
15-3165-cv
15-3166-cv
15-3180-cv
15-3183-cv
15-3198-cv

_____

[1] Judge Geoffrey W. Crawford, United States District Court for the District of Vermont, sitting by designation.

SALLY LIBRERA, and SOHAIB MALLICK,[2]

      *Defendants-Appellees.*

_____

Appearing for Appellant:     Charles B. Manuel, Jr., Manuel & Associates LLP, (Daniel Goldstein, *on the brief*), New York, NY.

Appearing for Appellee:     James B. Henley, General Counsel, New York City Transit Authority (Kathryn Martin and Robert K. Drinan, Executive Agency Counsel, *on the brief*), New York, NY.

     Appeal from a judgment of the United States District Court for the Southern District of New York (Crotty, *J.*).

     **ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED IN PART**, **REVERSED IN PART,** and **REMANDED**.

     Plaintiffs, six former employees of the New York City Transit Authority or the Metropolitan Transit Authority (together the "Transit Authorities"), appeal from the judgment of the United States District Court for the Southern District of New York (Crotty, *J.*) granting summary judgment to defendants as to claims that plaintiffs were terminated because of age discrimination. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. We affirm the district court's ruling as to Martinez, Kirkland, Gutierrez, Salmassi, and Thigpen, because these plaintiffs have failed to produce evidence suggesting that age was a but-for cause of their termination. We reverse the district court's ruling regarding English, because she has produced such evidence.

     The *McDonnell-Douglas* burden-shifting procedure applies to claims made under the Age Discrimination in Employment Act ("ADEA"). *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106-07 (2d Cir. 2010). We recently summarized this procedure in *Kovaco v. Rockbestos-Surprenant Cable Corp.*:

> We analyze employment-discrimination claims under . . . the ADEA using the now-familiar burden-shifting framework established by the Supreme Court in *McDonnell Douglas* . . . . Under that framework, a plaintiff must first establish a *prima facie* case of discrimination, which causes the burden of production to shift to the defendant to offer a legitimate, nondiscriminatory rationale for its actions. If the defendant satisfies its burden of production, then the presumption raised by the prima facie case is rebutted and drops from the case, such that at the final stage, the plaintiff then has the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision.

_____

[2] The Clerk of Court is directed to amend the official caption to conform with the caption above.

No. 15-2037-CV, 2016 WL 4434396, at *5 (2d Cir. Aug. 22, 2016) (internal quotation marks, footnotes, and citations omitted); *see also Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014). Defendants concede for the purpose of this appeal that Plaintiffs have made their prima facie case of age discrimination.

The Transit Authorities have, in turn, advanced a legitimate, nondiscriminatory reason for terminating the plaintiffs: a reduction in force ("RIF") necessitated by a budget shortfall of several hundred million dollars.[3] *Delaney*, 766 F.3d at 168. When the Transit Authorities determined that an RIF would be necessary, supervisors were directed to assign employees numerical scores in weighted categories. An Office of Management and Budget within the Transit Authorities had predetermined how many employees in each department would be laid off, and the employees receiving the lowest scores in each department were terminated.  At the time of evaluation, supervisors did not know how many employees in their departments would be terminated.

Plaintiffs argue that the RIF evaluation was generally defective, and that it should have used additional categories, grouped employees differently, or relied on past performance evaluations. "[W]e do not sit as a super-personnel department that reexamines an entity's business decisions." *Delaney*, 766 F.3d at 169 (quotations marks and citation omitted). Plaintiffs' general objections to the RIF evaluation process, without more, do not establish discriminatory intent.

Because the RIF was a legitimate, nondiscriminatory reason for the Plaintiffs' termination, the burden of proving age discrimination shifts back to the Plaintiffs.  *Delaney*, 766 F.3d at 168-69. Consequently, plaintiffs must show a "triable issue" as to whether age was a "but-for" cause of their termination. *Delaney*, 766 F.3d at 168.

### 1.  Martinez, Kirkland, Gutierrez, Salmassi, and Thigpen

We now consider the evidence with respect to Martinez, Kirkland, Gutierrez, Salmassi, and Thigpen.

The RIF's lack of disparate impact on older employees strongly suggests that age was not a factor in Plaintiffs' termination. *See McGuinness v. Lincoln Hall*, 263 F.3d 49, 55-56 (2d Cir. 2001) (granting summary judgment on the third step of *McDonnell-Douglas* in part because individuals outside the protected class were also terminated). Kirkland and Gutierrez worked in the same unit. Of the 12 employees terminated in that unit, seven were younger than Gutierrez and five were younger than Kirkland. Of the ten employees who remained, six were older than Kirkland and four were older than Gutierrez. Martinez and Thigpen worked together in a separate unit. There, 11 of the 36 individuals who kept their jobs were older than Martinez and five were Thigpen's age or older. Thigpen received the 5th lowest ranking in his group, and all

---

[3] Plaintiffs contend that the budget shortfall was caused by the Transit Authorities' own mismanagement, but the reason for the budget shortfall is irrelevant. Plaintiffs do not claim that the budget shortfall did not exist. Plaintiffs also claim that the Transit Authorities used the RIF to cover up pre-planned layoffs of the Plaintiffs, but no reasonable jury could infer that such a cover-up existed.

3

the individuals who received lower scores were younger than he was. Martinez received the 9th lowest score, and (except for Thigpen) all the employees who received lower scores were younger than him. While Salmassi was the oldest employee in her group, seven of the 16 employees who kept their jobs in her group were over the age of 50.

Plaintiffs argue that there must have been age discrimination because they had been successful employees at the Transit Authorities. But even successful employees may be terminated in an RIF.  Plaintiffs also argue for an inference of discrimination because they were "replaced" by younger employees after their termination.  However, no one was hired to replace the Plaintiffs; their work was redistributed among existing employees.  *See, e.g., LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 846 (1st Cir. 1993) (employee is not replaced when work is shifted to existing employees); *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990) (same).

These plaintiffs' remaining evidence is simply a collection of stray remarks, none of them made by the supervisors who evaluated plaintiffs for the RIF.  *Tolbert v. Smith*, 790 F.3d 427, 437-38 (2d Cir. 2015) (remarks are more probative when made by the decision-maker behind the adverse action).  Stray remarks alone are insufficient to defeat summary judgment. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998).

### 2. English

English, unlike the other employees, has produced sufficient evidence at this stage to create a "triable issue" as to whether age was a "but-for" cause of her termination. *Delaney*, 766 F.3d at 168. In a sworn declaration, English states that the following interaction took place between her and Sohaib Mallick, who was the Senior Director of her unit (English's supervisor's supervisor):

> In early July 2010, in the midst of the RIF, I was summoned to Mallick's office, where he boldly asked me, "Can you retire?" . . . I composed myself from my initial shock, and replied to Mallick, stating, "With a penalty. I am not of the age to retire, and I don't want to retire." To this, Mallick replied, "People who are eligible to retire should retire and make room for the younger generation."

App'x at 253. English further stated that, "[i]nstead of the current manager . . . grading [her]" on the RIF, "Mallick graded [her]." App'x at 311. Mallick, who signed English's final RIF detail sheet as its "[p]reparer," App'x at 495, did not meaningfully dispute that he rated English in the RIF, adding only the caveat that he did so "in conjunction with the managers that [supervise] my direct reports." App'x at 92.

Although stray remarks, without more, cannot defeat summary judgment, *Danzer*, 151 F.3d at 56, Mallick's alleged statement is less a "stray" remark than an open declaration of bias. It not only reflected a highly discriminatory attitude, but also came at the time of the RIF and referred directly to the particular employee's tenure with the Transit Authorities in negative terms. Compared to statements considered "stray remarks" in our past cases, these remarks are very strong indicators of discrimination. *See*

4

*Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (suggesting that, when considering whether remarks are probative of discrimination, courts consider "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).") (citations omitted).

Because Mallick, rather than English's regular supervisor, served as her primary reviewer for the RIF, a jury could infer that Mallick gave her a low rating for discriminatory reasons. Particularly in light of Mallick's statement, a reasonable jury might also be influenced by other indicia of discrimination in this case, such as an RIF format in English's department that assigned very low weight to categories related to experience or length of service with the company, and low weight to objective categories such as absenteeism, but extremely high ratings to intangible, subjective categories such as "Initiative" and "Communication Skills." App'x at 505, 495. *See Sweeney v. Research Found. of State Univ. of N.Y.*, 711 F.2d 1179, 1185 (2d Cir. 1983) (noting that "[s]ubjective evaluations . . . may mask prohibited prejudice"). Moreover, a jury could infer that Mallick intended to harm English based on evidence in the record that he reduced her job duties, and assigned her work unsuited to her skills, over a period of time before the RIF.

In light of Mallick's remarks, as well as other evidence suggestive of discrimination, the district court's grant of summary judgment to defendants must be reversed with respect to English's claims.

For the foregoing reasons, the judgement of the district court is hereby **AFFIRMED IN PART**, and **REVERSED IN PART,** and the case is **REMANDED** for further proceedings consistent with this opinion.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK